In Re The MARRIAGE OF Anne G. FRIEDMAN and Gary Friedman.

Upon the Petition of Anne G. Friedman, Appellant,

And Concerning Gary Friedman, Appellee.

No. 89–637.

Supreme Court of Iowa.

Feb. 20, 1991.

Richard G. Langdon and Richard N. Winders of Herrick, Langdon & Langdon, Des Moines, for appellant.

Patrick W. Brick of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Anne Friedman appeals from the economic provisions of the district court's decree dissolving her marriage to Gary Friedman. Anne contends that the district court improperly reduced the value of the stock of Friedman Motorcars, Ltd. She also claims that the appreciation in the value of the stock is a marital asset which should be equally divided. Anne further asserts that she is entitled to a greater proportion of the property, larger amount of alimony, and all her attorney fees at trial and on appeal. We modify and then affirm as modified the trial court decree.

Anne and Gary Friedman were married in 1964. They had one child, Charles, who was twenty-three at the time of the trial in

1988. Anne was forty-seven years old then and Gary was fifty-one. Anne graduated from high school and attended three years of college. Gary attended two years of college after high school graduation. Gary has worked for Friedman Motorcars, Ltd. or predecessor corporations since 1958. Anne served as an officer of Friedman Motorcars and occasionally performed services for the company.

Prior to 1974, Gary's father, Harold Friedman, was the sole owner of Friedman Motorcars. In 1974, Harold gave forty-one shares of common stock of Friedman Motorcars to Gary, nine shares to Anne and fifty shares to Gary's brother, Mike. In 1975, Harold again gave forty-one shares to Gary, nine shares to Anne and fifty shares to Mike. Also in 1975 Gary bought Mike's 100 shares for $75,000. Anne provided $32,500 of the $75,000 from her own trust account. The remaining $42,500 of the $75,000 was a gift to Gary from his father.

Based on these transactions, the trial court determined that Anne owns thirty percent of the corporation and Gary owns seventy percent. The parties stipulated that the fair market value of the corporation is $2,123,000. The district court then deducted the amount of capital gains tax and the selling costs that would be incurred if the stock was sold, arriving at an after-tax value of $1,310,730. The court then ordered Anne to transfer her stock to Gary and ordered Gary to pay Anne $336,000 (thirty percent of the after-tax value) for the stock. The court divided the other marital assets. The court also awarded alimony to Anne of $1000 per month for ten years. The court also ordered Gary to pay Anne $25,000 as a portion of her attorney fees.

Anne appeals the district court's decree. By order of this court dated May 10, 1989, Gary was ordered to pay Anne alimony of $1000 per month and to make mortgage payments on the parties' Clear Lake property and Arizona condominium. On October 10, 1989, Anne filed a motion to protect the parties' property. The motion requested this court to order Gary to cure a default on the Arizona condominium because he discontinued mortgage payments in April 1989. On October 27, 1989, this court remanded the case to the district court for the limited purpose of ruling on Anne's motion to protect the parties' property. Following a three-day hearing, the district court denied Anne's motion because she had acquired another Arizona property, vacated the subject property and refused to refinance it. Anne also appeals this ruling of the district court.

Anne contends that the district court improperly reduced the value of Friedman Motorcars by deducting the capital gains taxes and costs of selling the stock. She argues that such deductions are improper because the stock is not going to be sold.

Anne also claims that the property division was inequitable. Anne asserts that the appreciation of the corporate stock is a marital asset because she contributed to the success of the corporation. This took the form of providing money to purchase Mike's stock, maintaining their home for Gary, caring for their child, not seeking a career, and assisting with social functions for the corporation. She contends that the appreciation of the stock should be equally divided. Anne further claims that she is entitled to additional items of property.

Anne also contends that Gary is not credible based upon his misconduct during the proceedings, including his failure to obey court orders, his impediment of the judicial process and his failure to produce financial information. She also claims that, based on Gary's misconduct, she is entitled to all of her tens of thousands of dollars of attorney fees at trial and on appeal. Anne also requests that her alimony be increased to $5000 per month.

Finally, Anne contends that the district court erred by denying her motion to require Gary to refinance and cure the default on the Arizona condominium. The condominium has been foreclosed, sold and is not redeemable under Arizona laws. Anne claims that Gary's actions involving this property and the dealership's payments on Gary's personal obligations

should be factors considered in awarding Anne more property and more alimony.

Our review of this case is de novo. Iowa R.App.P. 4. We apply this standard to the economic provisions of the decree as well as to the spousal support provisions. *Zinger v. Zinger*, 243 N.W.2d 639, 640 (Iowa 1976). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court, but is not bound by them." Iowa R.App.P. 14(f)(7).

■ The principal argument of appellant, Anne, concerns the treatment of the stock in Friedman Motorcars. At trial, the parties' joint expert testified that the fair market value of this stock and the joint venture that owned the business premises was $2,123,000. The joint venture was affiliated with the corporation and considered as one. In its findings the trial court determined the value to be $1,310,730. This figure was arrived at by subtracting an estimated expense for capital gains taxes and selling costs in the event the corporate stock was sold.

We have recognized that this approach may be appropriate. In *In re Marriage of Hoak*, 364 N.W.2d 185, 195 (Iowa 1985), we said: "In the division of property the tax consequences to a party may be taken into account. Iowa Code § 598.21(1) (1983). Subsection 598.21(1)(j) follows the general rule. 24 Am.Jur.2d *Divorce and Separation* § 926 (1983)." However, in *Hoak*, we disapproved of the trial court's forty percent discounting of the stock for this reason and other market factors.

The Iowa Court of Appeals has noted and applied the income tax consequences flowing from the sale of property. *In re Marriage of Dahl*, 418 N.W.2d 358 (Iowa App.1987). Tax consequences were also considered in *In re Marriage of Hayne*, 334 N.W.2d 347 (Iowa App.1983), where the court of appeals said:

> Although liquidation of respondent's Keogh plan would have entailed certain tax liabilities, the court did not order him to liquidate his plan, and it is evident that respondent had other assets available to meet the court's orders without liquidat-

ing it. It was no error for the court to consider the full value of the Keogh plan without figuring in the potential tax liability upon liquidation when determining the value of marital property for division under the terms of the decree.

*Id.* at 353.

We have also recognized a reduction in the fair market value of stock based on other factors. In *Hoak* we subscribed to a discount because the stock was a minority interest and stock sales were limited due to the husband's status in the company. In *In re Marriage of Muelhaupt*, 439 N.W.2d 656 (Iowa 1989), we valued the stock after discounting it twenty percent because it was a minority interest and twenty percent because there was no ready market. There, a $175,000 award to the wife as her share in the corporate stock was made payable in installments. Our decision also provided: "If the stock is sold before the payments are complete the entire amount remaining due (allocating previous payments in proportion to their assigned values) under the division ordered shall be immediately paid in full." *Id.* at 661. No amelioration of the effect of this future sale, if made, was given by our court.

In the case at bar, the problem with considering tax consequences on the sale of corporate stock in the possession of Gary is that there was no evidence that a sale was pending or even contemplated. There is little doubt that a car dealership is a highly marketable business and that the stock would be readily saleable. But where there is no evidence to support a discounting based on a sale and the trial court has not ordered a sale, the effect of considering income tax consequences on a sale is to diminish the asset value to the nonowning spouse. In this case, Anne's share was considerably reduced by the inappropriate infusion of tax consequences on an illusory future sale of stock. For this reason we find the fair market value of Friedman Motorcars stock for marital division purposes to be $2,123,000.

■ The trial court found that Anne was entitled to thirty percent of the parties'

interest in the corporation. This recognized a nine percent interest acquired by gift from Harold Friedman and a twenty-one percent interest by providing $32,500 of the purchase price for Mike Friedman's stock. This stock was purchased by Gary Friedman on March 11, 1975, for $75,000. Mathematically Anne's contribution would be forty-three and one-third percent of the $75,000 which represented half of the corporate stock or twenty-one and two-thirds percent of the entire corporate stock.

Anne complains that this computation contains several fallacies. It does not reflect any amount from the $75,000 that was for Gary's business profits or his management of the business. It gives Anne only what she bought or was gifted and includes nothing as a spousal share of the business. Also, it ignores a suggestion of fraud practiced on Anne by carrying her corporate share on the books at only nine percent.

Anne argues that her rightful share of the corporate business is either fifty-nine percent or forty-three percent. The fifty-nine percent would accrue from considering all of the corporate stock as a marital asset, awarding her fifty percent plus the nine percent received by gift by Harold Friedman. The forty-three percent would result from a different treatment of the purchase of stock from Mike. Anne asserts that the true value of Mike's stock was $47,722, the value placed on gift tax returns filed in 1974 and 1975 when the gifts of stock were made. She argues that this valuation also takes into account an amount for management and profit purportedly included in the $75,000 purchase price. Based on this lower valuation of $47,722, Anne's contribution of $32,500 amounted to sixty-eight percent. Since Mike's stock amounted to one-half of the corporate stock, Anne's purchase would be for thirty-four percent of the stock. This plus her nine percent acquisition by gift would equal forty-three percent of all the stock.

While these are arguable conclusions based on the evidence, we find support for the trial court's construction that in 1975 Anne owned nine percent of the corporate stock by gift and twenty-one percent by purchase. We also find the evidence supports treating the stock in Friedman Motorcars as a marital asset. Anne's capital contribution in 1975 made possible the acquisition of the controlling interest in the stock by Gary. The marriage of twenty-four years was of long duration during which Anne maintained the parties' home, raised their son, assisted in the social functions of the corporation and did not engage in any other occupation that might have contributed to her self-sufficiency. These considerations are in addition to the thirty percent owned outright by Anne and justify some increase in her total proportionate share. Although Anne argues she should receive at least fifty percent of the stock, we find that excessive. It is appropriate, however, to assign a ten percent addition for these considerations making a total stock amount of forty percent to Anne.

The parties disagree as to the value of the corporate stock in 1975. Mike received $75,000 for one-half of the corporate stock, making its total value $150,000. Mike and Anne place the value at less. Using the highest figure together with the stipulated corporate value of $2,123,000 at trial time renders an appreciated value of the stock of $1,973,000. Anne asks for fifty percent of this appreciated value.

We have previously dealt with the question of appreciated stock value in our case law. The court of appeals included in its property division the appreciated value of stock in *In re Marriage of Wallace*, 315 N.W.2d 827 (Iowa App.1981). Our court approved this language from *Wallace:*

[A]s time goes on, the benefits of such property are enjoyed by the married couple; it is both natural and proper for the expectations of the other spouse to rise accordingly. A sudden substantial rise in the couple's standard of living made possible by a gift or inheritance to the husband or the wife will naturally and reasonably lead the other spouse to anticipate that that standard of living will be maintained, particularly if it is sustained over a lengthy period of time.... With time such changes become ever more

deeply ingrained, and eventually it becomes virtually impossible to return to a world long since renounced and forgotten.

*Muelhaupt,* 439 N.W.2d at 659; *see also In re Marriage of Lattig,* 318 N.W.2d 811 (Iowa App.1982). Other courts have also divided the appreciated value of assets even when separately held where the increase resulted from the talent, time and effort of the marital partners. *See generally In re Marriage of Lee,* 87 Ill.2d 64, 58 Ill.Dec. 779, 780, 430 N.E.2d 1030, 1031 (1981); *In re Marriage of Scott,* 85 Ill. App.3d 773, 41 Ill.Dec. 547, 550, 407 N.E.2d 1045, 1048 (1980). In the case at bar we feel it is equitable to treat the appreciated value of the stock that we have deemed a marital asset in the same manner as the unappreciated values. In *Locke v. Locke,* 246 N.W.2d 246 (Iowa 1976), we pointed out that there need be neither an equal division nor a percentage division of the property, saying "that which is determinative is that which would constitute an equitable and just award under the circumstances." *Id.* at 251. Therefore, Anne's share of the corporate stock as part of the property division is forty percent of the $2,123,000 value or $849,200.

Anne also criticizes the court's division of other marital assets in numerous ways. She is dissatisfied with it in kind and amount. To bolster her argument here, she details a continuum of obstinance by Gary that caused difficulties in litigation and expense. Many pages of the parties' briefs are devoted to excoriating the other's conduct in hopes of gaining a more favorable result. Gary denies any bad conduct, yet hints at justification by pointing out that Anne at the outset surreptitiously drained their joint bank account of $116,-000. One result of their intractability is the loss of all equity, including their son's, in their Arizona condominium. In any event, much waste of time, effort and expense to the parties has resulted, much of which should have been avoided.

■ We are also concerned by the detailed assault on the trial court's division of property. Even though we perform a de novo review on the trial court's findings and conclusions, on appellate review, a greater emphasis should be placed by the parties and their attorneys on pointing out wherein they believe the most egregious errors and consequences therefrom occurred and then help mold the court's decision to correct that result.

The trial court's division of other assets resulted in property having a net value to Anne of $334,949 and to Gary of $163,656, a difference of $171,293. Although our division of these assets may have been different, we find sufficient justification in light of our other findings to adopt this as our division. The difference in property division here was adjusted by the trial court by subtracting $171,293 from the amount due Anne as her share of the Friedman Motorcars stock. We find this methodology suitable and accordingly reduce Anne's $849,200 share from Friedman Motorcars stock by $171,293 to $677,907. This sum, at Gary's option, may be paid off in installments as follows: $5650 per month for 120 months plus accrued interest on January 1 and July 1 of each year until the balance is paid in full. Any unpaid balance shall draw interest at the rate of six percent per annum. We have determined this interest rate to be appropriate in this case, although it is less than the statutory rate of interest on judgments, because of our award of alimony and our decision on property division. In the event Gary desires to make periodic payments, he must secure them by executing necessary documents to encumber his Friedman Motorcars stock to Anne for any balance due. If the stock is sold before the payments are complete the entire amount remaining due shall be immediately paid in full.

■ Alimony in the amount of $1000 per month for 120 months was also ordered by the trial court. In marriages of long duration we approve both alimony and nearly equal property division, especially where the disparity in earning capacity is great. *In re Marriage of Hitchcock,* 309 N.W.2d 432, 438 (Iowa 1981). In light of our other findings, we affirm the amount of the alimony award. These amounts paid for ali-

mony shall terminate upon Anne's remarriage or the death of either party.

Anne also requests us to order Gary to pay her attorney fees incurred on this appeal from the trial court's decree. We conclude that she will have sufficient resources to pay her own attorney fees.

The judgment of the trial court is affirmed as modified.

AFFIRMED AS MODIFIED.