**IN THE COURT OF APPEALS OF IOWA**

No. 22-0169
Filed March 8, 2023

**IN RE THE MARRIAGE OF MELISSA KAY LEWIS
AND DAVID EDWARD LEWIS**

**Upon the Petition of
MELISSA KAY LEWIS,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
DAVID EDWARD LEWIS,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


        A husband and wife appeal the economic terms of their dissolution decree.

**AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**


        Andrew B. Howie, Steven H. Shindler, and Jonathon P. Tarpey of Shindler,

Anderson, Goplerud, & Weese, P.C., West Des Moines, for appellant.

        Anjela Shutts and Anna E. Mallen of Whitfield & Eddy, P.L.C., Des Moines,

for appellee.


        Heard by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

This appeal involves the economic terms of the decree dissolving the marriage of David and Melissa Lewis. David appeals the division of marital property. Melissa cross-appeals, arguing she should be awarded spousal support and an accelerated timeline to receive the property equalization payment. Both parties request appellate attorney fees, and Melissa argues the district court failed to do equity in denying her request for trial attorney fees. Upon our de novo review, we affirm the district court order with respect to the division of marital property, spousal support, and trial attorney fees. However, we modify the property equalization award to include interest on the installment payments and decline to award appellate attorney fees.

### I. Background Facts and Proceedings.

Melissa and David were married in 1986 and have three adult children. Melissa obtained her bachelor's degree in accounting in 1991. She worked part-time in the accounting field over the next several years. David obtained two bachelor's degrees, one in 1989 and another in 1990, as well as a master's degree in business administration in 2000. He worked as an engineer from 1989 to 2002.

In 2002, the parties jointly purchased Creativision, Inc., an Iowa corporation under which they do business as Performance Display & Millwork (PDM). Since then, David and Melissa have worked full-time for the company, which manufactures commercial millwork, cabinetry, and retail displays. They formed two additional entities for the purpose of holding real estate for PDM: Merge Right LLC in 2008 and Merge Left LLC in 2017. Melissa and David exclusively own all three businesses. Melissa is the chief executive officer and president of PDM and

is responsible for accounting and financial operations. David is the executive vice president and generally responsible for sales and operations.

Over the years, Melissa and David typically paid each other equal salaries, although some years were disproportionate depending on the needs of the business. At the time of purchase, PDM was averaging about $2 million in annual sales and had roughly nine employees. Under the parties' ownership, the business grew to about sixty employees and approximately $9 to $10 million in annual sales. David and Melissa acknowledged PDM has experienced ups and downs, variably earning a net profit or loss. They have personally loaned nearly $400,000 to PDM. The parties' marital issues and the COVID-19 pandemic negatively impacted PDM in 2020. David testified that PDM would have gone out of business without the financial aid it received from governmental relief programs. But trial testimony established that a PPP loan taken out in 2020 was forgiven the same year, and PDM expected a second PPP loan of $915,000 would also be forgiven. And by the time of trial, PDM had seen an uptick in sales, reporting nearly $7.5 million by the third quarter of 2021.

Melissa filed for divorce in June 2020 and informed PDM's executive leadership team that she would be stepping down from the company after the dissolution was finalized. A two-day Zoom trial was held in November 2021, at which time Melissa was fifty-seven years old and David was fifty-six years old. Both parties reported being in relatively good physical and mental health. The district court granted the parties' business holdings to David. It denied Melissa's request for spousal support but purported to find her valuation of PDM more credible. The court awarded David certain marital assets and assigned those

assets a net value of $3,814,064. The court awarded Melissa certain marital assets and assigned those assets a net value of $759,508.[1] To equalize the property distribution, the court ordered a $1,527,278 property settlement against David to be paid in $75,000 annual installment payments for the first six years following entry of the decree and then satisfied entirely by a lump sum payment at the end of the seventh year in the amount of $1,077,278. David filed a timely appeal, and Melissa cross-appealed.

## II. Review.

Because dissolutions of marriage are equitable proceedings, our review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *Id.* We will disturb those findings only if they fail to do equity. *Id.* "There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991).

In addition, "[w]e review the denial of attorney fees for an abuse of discretion." *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). "We reverse the district court's ruling only when it rests on grounds that are clearly unreasonable or untenable." *Id.*

---

[1] The trial court adopted the valuations set forth in Melissa's exhibit 46.

### III. Discussion.

#### A. Division of Marital Property.

David contends the district court inequitably divided the parties' marital property by awarding a property settlement to Melissa based upon her unsubstantiated valuation of the parties' business holdings. Effectively, David does not challenge the fact that the district court attempted to equalize the distribution of property but disputes the underlying valuations for PDM and the holding companies used to calculate that equalization. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) ("Although an equal division is not required, it is generally recognized that equality is often most equitable." (citation omitted)).

David presented expert testimony regarding the value of the companies using an asset-based approach, which essentially valued the companies as if they were being liquidated for sale. Among other challenges to David's figures, Melissa asserted David's valuation approach was improper because he testified that he wants to stay in business. *See In re Marriage of Friedman*, 466 N.W.2d 689, 691 (Iowa 1991) ("In the case at bar, the problem with considering tax consequences . . . is that there was no evidence that a sale was pending or even contemplated."); *see also In re Marriage of Treimer*, No. 09-1390, 2010 WL 1579646, at *5 (Iowa Ct. App. Apr. 21, 2010) (declining to account for the costs of sale and capital gains tax in the valuation of the parties' farmland because there was no evidence that the receiving party planned on selling the farm).

After acknowledging Melissa's critiques of David's valuations, the court explicitly adopted Melissa's "valuations" of all three companies as more credible.

However, Melissa provided no third-party valuations. Her requested relief listed the values for PDM and Merge Left as "unknown" and indicated Merge Right's value was $12,497. Melissa explained that she accounted for the businesses in this way because she was requesting spousal support, so PDM should be valued using an income approach to calculate David's ability to pay alimony. Ultimately, the district court declined to award alimony and needed to divide the value of the businesses. By basing its order upon the numbers Melissa provided for the parties' business and personal assets, the court effectively assigned a value of zero dollars for the companies Melissa labelled as "unknown."

After a careful review of the evidence, we find the district court's valuations of property and property distribution were equitable. *See In re Marriage of Vieth*, 591 N.W.2d 639, 641 (Iowa Ct. App. 1999) ("[W]e give strong deference to the trial court which, after sorting through the economic details of the parties, made a fair division supported by the record."). "Although our review is de novo, we will defer to the trial court when valuations are accompanied with supporting credibility findings or corroborating evidence." *Id.* at 640. Here, the district court made an express credibility finding in favor of Melissa. Specifically, it noted that David's expert valued PDM as negative $1,515,000 based upon reductions to the accounts receivable and value of inventory informed by figures David provided "with little, if any, verification." In fact, the reductions to the accounts receivable and inventory total more than the negative value of the business put forth by David and would actually support a positive valuation for PDM if removed altogether. Moreover, David's valuations of Merge Right and Merge Left included a ten-percent reduction for lack of marketability and setoffs for capital gains taxes despite the fact that

David testified at trial that he did not wish to sell the companies. Given these unsubstantiated deductions, the district court's decision to value PDM and Merge Left at zero dollars and Merge Right at $12,497 was within the permissible range of evidence, and we will not disturb it on appeal. *See In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) ("[A] trial court's valuation will not be disturbed when it is within the range of permissible evidence.").

As for the payment terms ordered for the property equalization award, we take issue only with the lack of interest imposed. Melissa contends that spreading the payments out over seven years without interest effectively forces her to finance David's continued operation of the business. She suggests ordering the payments be made over four years with interest accruing at a rate of five percent. Although we decline to adjust the payment timeline, we modify the award to reflect that it shall be considered a judgment and accrue interest at the statutory rate beginning six months from the date of this opinion until such time as it is paid in full. *See In re Marriage of Galles*, No. 16-2211, 2017 WL 6026474, at *7 (Iowa Ct. App. Nov. 22, 2017) ("Payment of a property equalization in installments has been approved by our supreme court, *see In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979), as long as the court provides for interest on the delayed payments."). We affirm the court's distribution of property save for our imposition of interest.

### B. Spousal Support.

Spousal support depends on the circumstances of each case and factors the comparative earning capacities of the parties. *See In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486–87 (Iowa 2012). Because the court has "considerable latitude" in determining an award of spousal support, we only disturb

the award if it fails to do equity. *Id.* at 486. Melissa requested David pay her traditional alimony in the amount of $6250 per month, which is equivalent to her most recent salary from PDM. She testified that she anticipated difficulty finding a new position with a comparable salary. Melissa also testified that she had no definite plans for seeking new employment after leaving PDM and had not begun searching for a new job because she did not know when she would be leaving PDM. The district court found that Melissa is self-sufficient and "does not have a significantly lower earning capacity than David." Furthermore, the court did not "anticipate that spousal support will be necessary for either party to maintain their respective lifestyle following this dissolution."

"[T]he imposition and length of an award of traditional alimony is primarily predicated on need and ability." *In re Marriage of Gust*, 858 N.W.2d 402, 411 (Iowa 2015). Melissa has no physical or mental conditions that would prevent her from engaging in full-time employment. She has a bachelor's degree and twenty-nine years of accounting experience. Despite Melissa's lack of concrete prospects for future employment, we find her earning capacity does not support a need for alimony. *See id.* ("In determining need, we focus on the earning capability of the spouses, not necessarily on actual income."). Under these circumstances, we cannot find the district court's decision to deny spousal support inequitable. Therefore, we affirm on this issue.

### C. Attorney Fees.

Melissa argues the district court abused its discretion in declining to award her trial attorney fees. She explained that she paid the first $5000 of her attorney fees on a business credit card but paid the rest personally. Prior to trial, David

paid $10,000 in attorney fees from the parties' joint checking account and another $10,000 with a business credit card. Therefore, Melissa requested $15,000 to equalize the financial impact of the dissolution proceedings. However, the district court held that "[n]either party here has the ability to pay the other party's attorney fees." *See Kimbro*, 826 N.W.2d at 704 ("Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." (citation omitted)). Any personal payment for attorney fees should have been reflected in the accounts identified for division between the parties. Therefore, we find Melissa's equalization argument without merit. Because the parties were earning comparable incomes at the time of trial, we find no abuse of discretion in the district court's decision to deny Melissa's request for trial attorney fees. We affirm on this issue.

Additionally, each party requests an award of their appellate attorney fees. Such an award is not a matter of right but rests in our discretion. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In exercising this discretion, we consider the needs of the party seeking appellate attorney fees, the other party's ability to pay, and the merits of the claims made on appeal. *See id.* Given the comparable financial positions of the parties and combination of arguments asserted on appeal, we decline to award either party appellate attorney fees.

### IV. Disposition.

In summary, we affirm the district court's valuation and equitable distribution of the marital property but modify the terms to include interest on the installment payments. Because Melissa has failed to establish an ongoing need for spousal support, we affirm the court's decision not to award alimony. We likewise affirm

the court's decision to deny Melissa's request for trial attorney fees. We furthermore decline to award appellate attorney fees to either party.

**AFFIRMED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**