# IN THE COURT OF APPEALS OF IOWA

No. 16-0251
Filed March 8, 2017

IN RE THE MARRIAGE OF ELIZABETH A. REPP-DANIS AND
MICHELE M. REPP-DANIS

Upon the Petition of
ELIZABETH A. REPP-DANIS,
        Petitioner-Appellant,

And Concerning
MICHELE M. REPP-DANIS, n/k/a
MICHELE M. DANIS,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Boone County, Steven J. Oeth,

Judge.


        Elizabeth Repp-Danis appeals the denial of a motion for new trial and the

division of property provisions of the decree dissolving her marriage to Michele

M. Danis.  **AFFIRMED.**


        Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson ,P.C., West

Des Moines, for appellant.

        Angelina M. Thomas of Newbrough Law Firm, L.L.P., Ames, for appellee.


        Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Elizabeth Repp-Dannis (Beth) appeals the district court's decision denying her motion for new trial and the provisions of the dissolution decree dividing property between the parties. We find the district court properly denied the motion for a new trial and properly divided the assets and debts of the parties. We affirm.

## I. Background Facts and Proceedings

Michele and Beth Repp-Dannis began dating in 1997. Beth began living with Michele in 1998, and the couple remained in Michele's home until 2001. In 1999, the parties had a commitment ceremony at the Unitarian Fellowship in Ames, Iowa, changed their last names to Repp-Danis, and considered themselves to be married. On January 12, 2010, Beth and Michele were legally married. The district court considered the relationship "a long-term marriage, given that Beth and Michele have considered each other spouses since 1999."

Beth and Michele entered the relationship with debt and continued to spend beyond their means. During the relationship, Beth's grandfather died and left her an interest in a farm which she sold for $85,500. Beth used this inheritance to pay outstanding debts, purchase cars, and pay for the 1999 ceremony. When Beth's father died, in 2001, she again inherited a portion of a farm and sold her interest for $226,500. This inheritance was used to pay for a new car for Michele, travel, a house the parties lived in, furniture, equipment to care for the property, and remodeling the home, with most of the work being done by Michele.

The parties continued to accumulate debt. They transferred debt between credit cards, mortgaged the home to pay off the credit card balances, and began the cycle again. Michele's father died in 2011, and she inherited approximately $60,000. This money was used to pay off outstanding debts, to purchase materials to build a deck, and as down payments for a new Jeep and camper. By the time of trial, Michele had effectively spent the entire amount of her inheritance. The most recent mortgage, $101,972.61, taken in October of 2010, had a balance of $93,651.32 at the time of trial and was owed by the parties as tenants-in-common. The mortgage was used to pay off the debts both parties had accumulated, as well as continuing to finance the parties' lifestyle. In addition to the mortgage, the parties owed more than $15,000 in credit card debt.

Beth petitioned for dissolution of marriage on March 17, 2015, and trial was held on November 18. On November 24, the district court entered its decree and valued the house at $145,000, granted Beth the house, granted Michele half the equity, and required Beth to pay the mortgage.

Beth requested an extension of time to enlarge and amend the decree, citing her attorney's "personal health reasons." On December 9, trial counsel filed an application to withdraw and informed the district court withdrawal was necessary due to medical issues. The district court granted counsel's motion to withdraw on December 10. The next day Beth filed a motion to vacate the decree and grant a new trial, claiming trial counsel had been mentally impaired during the trial. Further, Beth claimed counsel had hidden his impairment before and during the trial and only disclosed the impairment on December 7, after the district court entered its decree. At that time, counsel notified Beth his practice

was closing because of his health, advised her to find a new attorney, and refunded the entire fee Beth had paid him.

The district court denied both motions. Beth now appeals.

## II. Standard of Review

Equitable actions are reviewed de novo. Iowa R. App. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court is given latitude to make determinations which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

## III. New Trial

Beth claims she is entitled to a new trial based on her attorney's alleged impairment during trial. She claims this impairment, though not diagnosed until after the trial was completed, was present at trial, hidden from her, and affected the trial's outcome. Beth especially complains about repetitive questions asked by her attorney. A party is entitled to a new trial if their rights are affected by "accident or surprise which ordinary prudence could not have guarded against." Iowa R. Civ. P. 1.1004(3). A party may also be granted a new trial if there was "irregularity or fraud practiced in obtaining [the verdict]." Iowa R. Civ. P. 1.1012(2).

However, our supreme court has held "[t]he law regards the neglect of an attorney as the client's own neglect, and will give no relief from the

consequences thereof." *Jones v. Leech*, 46 Iowa 186, 187 (1877). Additionally, "[t]here can be no doubt that in Iowa the negligence or fraud of a party's own attorney is not sufficient showing of fraud." *Ware v. Eckman*, 277 N.W. 725, 727 (Iowa 1938). While our supreme court has granted new trials for the neglect by a party's attorney in the past, these cases involved default judgments. *See e.g. Newlove v. Stern*, 196 N.W. 51, 53 (Iowa 1923); *see also Ennis v. Fourth St. Bldg. Ass'n of Clinton*, 71 N.W. 426, 427 (Iowa 1897); *see also Ordway v. Suchard & Gebhard*, 31 Iowa 481, 488 (1871).

Additionally, the record does not support a finding counsel was impaired at the time of the trial. The diagnosis was obtained two weeks after trial. The district court noted in its ruling on the motion for new trial,

> All of the areas which Petitioner suggests were not properly covered in the trial were, in fact, covered in significant detail . . . . As concerns Petitioner's attorney's impairment, the court has known Petitioner's attorney for over 30 years. Based on the court's view, Petitioner's attorney's performance did not suggest he was impaired. He did ask some repetitive questions. He has always done that, and repetitive questions are frequently asked by attorneys. Petitioner's attorney's difficulties with exhibits were more a product of the large number of exhibits than it was because of an impairment.

Also, we note, the district court is required by the Iowa Code of Judicial Conduct to "take appropriate action" if the district court has "a reasonable belief that the performance of a lawyer . . . is impaired . . . by a mental, emotional, or physical condition." Iowa R. Civ. P. 51:2.14. If the district court has "knowledge that a lawyer has committed a violation of the Iowa Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or

fitness as a lawyer in other respects shall inform the appropriate authority." Iowa R. Civ. P. 51:2.15.

The district court did not take any of the required actions, and therefore, it did not believe Beth's attorney was impaired. The district court stated the attorney was competent during the trial and was able to compare the attorney's performance with an extensive professional history to conclusively state trial counsel acted with similar skill to past trials. We find the district court properly denied the motion for new trial.

### IV. Division of Property

#### a. Valuation of the Marital Home

Beth also claims the district court assigned an improper value to the house. Michele claimed the house should be valued at $145,000 and relied on a value established in a 2010 loan application signed by both parties. Beth claimed the house was only worth $127,400. Evidence showed the parties have significantly improved the property after purchasing it for $127,500, although there was testimony that certain areas of the house and property had fallen into disrepair.

The valuation by the district court will usually not be disturbed if it is within the range of evidence. *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). A homeowner is qualified to testify to the value of the home. *Id.* The district court relied on proper evidence and its valuation was within the range of evidence. We affirm the district court's valuation.

### b. Inheritance

Beth also claims the district court improperly divided the parties' assets by refusing to set aside $127,500 of the house's value as inherited property. She purchased the property with no mortgage in 2001, using money from the sale of an inherited share in her father's farm. During the cycle of accumulating debt and mortgaging the home to pay those debts, Michele was made a tenant-in-common in 2005.

Inherited property "is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." Iowa Code § 598.21(6) (2015). When considering if inherited property should be divided we must consider:

> (1) contributions of the parties toward the property, its care, preservation or improvements;
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of Muelhaupt*, 439 N.W.2d 656, 659 (Iowa 1989) (*citing In re Marriage of Thomas,* 319 N.W.2d 209, 211 (Iowa 1982)).

These factors are not exclusive and:

> Other matters, such as the length of the marriage . . . though not independent factors, may indirectly bear on the question for their effect on the listed factors. Still other matters might tend to negative or mitigate against the appropriateness of dividing the property under a claim that it falls within the exception.

*Thomas*, 319 N.W.2d at 211.

The district court held the marriage lasted sixteen years, beginning in 1999, the year of the ceremony, name change, and when the parties considered themselves spouses. We must disagree. The relationship could not have been legally recognized in 1999, even as a common law marriage, so we must calculate the length of the marriage from their legally recognized marriage on January 12, 2010.

However, the district court also made specific findings on the *Muelhaupt* factors. First, the district court found Michele had made significant contributions in improving the property. We agree. Michele completed major projects to improve the house and increase its value. Michele was also responsible for much of the upkeep of the property. The first factor weighs in favor of Michele. Michele did not have any independent relationship with the testator. The second factor weighs in favor of Beth. The third factor, separate contributions of the party to their economic welfare, also weighs in favor of Michele. Michele used an inheritance she was bequeathed to finance the parties' lifestyle and to fund improvements to the house. Michele also has special needs, which weigh in her favor. She has been diagnosed with a degenerative disc disease, which has decreased her ability to continue to work in her chosen field. Finally, Michele was made a tenant-in-common with Beth and used her own income to help maintain the property, pay household bills, and pay for the mortgage the parties used to consolidate the extensive credit card debt that financed their lifestyle. We recognize the titling and commingling of an inheritance is not the controlling factor in the division of property. *See In re Marriage of Fall*, 593 N.W.2d 164,

167 (Iowa Ct. App. 1999). However, due to the significant contributions Michele made to the house and its upkeep as a tenant-in-common, this factor weighs in Michele's favor.

Additionally, the parties never used separate accounts, never partitioned their finances, income, or property, and treated their finances as an open cash register to fund a lifestyle beyond their means. It would be "plainly unfair" to leave the equity of the house for Beth's enjoyment alone. *Muelhaupt*, 439 N.W.2d at 659. The majority of the factors weigh in Michele's favor and we hold the district court fairly divided the equity in the house.

### c. Credit Card Debt

Finally, Beth claims the district court improperly found certain credit card debt to be marital debt. The district court assigned the debt on the Citi card and Discover (6815) card with a combined debt of $6167.26 to Michele. Beth was assigned the debt on the Discover (0446) card with a debt $6189.62. Beth claims the debt on all three cards is attributable to Michele only, and therefore, she should not be required to pay any of it. At trial both parties testified each card had a primary card holder. Beth claims the parties "understood which cards were which party's," and Michele specifically testified she accumulated the balance on the Discover (6815) after the petition for dissolution for living expenses. However, Michele also testified the parties did not use the cards individually; instead, both used the card with the lowest interest rate.

After hearing testimony, the district court divided the parties' debt, including the credit cards, between the two parties. We find this to be a credibility determination made by the district court favoring Michele's testimony.

Additionally, we have previously held a credit card, used to pay expenses of one spouse during the pendency of the divorce, is still subject to equitable division by the trial court. *See In re Marriage of Jahnke*, No. 13-1382, 2014 WL 2432154, at *2 (Iowa Ct. App. May 29, 2014). Accordingly, we find the district court properly considered the credit card debt a marital debt.

### V. Attorney Fees

Finally, Michele claims she should be awarded attorney fees. "An award of attorney's fees is not a matter or right but rests within the discretion of the court." *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996). We find a grant of attorney fees is inappropriate in this case.

**AFFIRMED.**