# IN THE COURT OF APPEALS OF IOWA

No. 17-2023
Filed February 6, 2019

IN RE THE MARRIAGE OF LINDA L. DORR
AND FRED L. DORR

Upon the Petition of
**LINDA L. DORR,**
　　　　Petitioner-Appellant,

**And Concerning**
**FRED L. DORR,**
　　　　Respondent-Appellee.

_____

　　　　Appeal from the Iowa District Court for Polk County, Dustria A. Relph, Judge.

　　　　Linda Dorr appeals the district court's decree as to the spousal support award, property division, and denial of attorney fees in a marriage dissolution decree. **AFFIRMED.**

　　　　Matthew G. Sease of Kemp & Sease, Des Moines, for appellant.

　　　　Matthew O'Hollearn and Thomas Levis of Brick Gentry, PC, West Des Moines, for appellee.

　　　　Heard by Tabor, P.J., Bower, J., and Mahan, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BOWER, Judge.**

Linda Dorr appeals the decree dissolving her marriage with Fred Dorr, challenging the spousal support award, the division of property, and the district court's failure to award attorney fees.  We affirm the district court's decree.

## I.        Background Facts & Proceedings

Linda and Fred married in 1984.  It was the second marriage for each of them.  Two children, now adults, were born of the marriage; Linda has a child from her previous marriage.  The parties have lived in the same marital home since 1984.

Linda, who was born in 1953, has a high school education and has taken some college courses.  She left the workforce in 1985 to stay home with their children.  In 1994 Linda started a business designing and creating teddy bears that she continues to this day.  From 2001 to 2011, Linda worked as an administrative assistant, then office manager until her position was eliminated in 2011.  She then chose to retire  at age fifty-eight.  She opened an antique business with her sister in 2013.  Linda has not had regular employment since 2011, and she loses money on her teddy bear and antique business ventures.  Linda inherited approximately $200,000 following her mother's death in 2014.  This inheritance is expected to generate $10,000 per year in income.  In January 2019, Linda will begin receiving $15,944 per year in Social Security benefits.

Fred was born in 1947.  He has practiced law in Iowa since before the parties married.  As partner in a law firm, Fred's income has fluctuated, but has generally exceeded $100,000 per year.  Fred's law firm income is dependent on fees he has generated, and he typically draws $10,000 per month.  Fred inherited

approximately $1.9 million of assets—including stock and farmland—from various trusts and entities following his mother's death in 2013. During his mother's life, Fred acted as a trustee for these family entities. Fred performed management tasks for the trusts and his mother's care for eleven years. After his mother died, the trusts were gradually terminated and the assets distributed in 2015 and 2016. Fred's share of the distributed assets now generates an income of approximately $48,000 per year. Fred also receives $31,888 per year in Social Security benefits.

Linda filed a petition for dissolution on July 26, 2016. On September 15, the parties filed a stipulation on temporary matters, with Fred paying $5750 per month into a joint bank account for Linda to pay the family expenses. Throughout the marriage, Fred generally paid the bills coming in and deposited money in Linda's account for other expenses. The parties paid for college for the three children, including withdrawing money from retirement accounts and taking out loans to pay the expenses.

A trial was held in August 2017. At the time of trial Linda was sixty-four years old and Fred was sixty-nine years old. A week prior to trial, Linda found a lump and was subsequently diagnosed with Stage 2 breast cancer.

The court awarded each party their respective vehicles, bank accounts, retirement accounts, debts, and inherited assets. Linda was awarded the marital home and accompanying mortgage and the majority of household contents. Fred was ordered to pay Linda a $25,000 equalization payment. The court awarded Linda traditional spousal support in the amount of $5500 per month until she turns sixty-six, then stepping down to $5000 per month until either party dies or Linda

remarries. The court ordered each party be responsible for their attorney fees and one-half of the court costs. Linda appeals.

## II.    Standard of Review

The standard of review for an action dissolving a marriage is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). We only disturb the district court's order if there has been a failure to do equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We give weight to but are not bound by the district court's factual findings. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

## III.    Analysis

**A.    Spousal support award.** The court awarded Linda traditional spousal support. Fred does not contest the award. Considering Linda's monthly expenses of $5000, the expected incomes of the parties, and their ages, the court ordered Fred to pay Linda $5500 per month until January 2019, when Linda will begin receiving Social Security, then $5000 per month until the death of either party, Linda's remarriage, or other order by the court.[1] The court did not provide for a step-down in the support payment upon Fred's retirement, noting any modification would depend on the circumstances at that time.

In its reasoning, the court noted the unfairness of expecting Fred to continue to work while Linda, five years younger than Fred, had been retired for six years. The court imputed employment income of $25,000 to Linda, $10,000 income from her inheritance, and noted her Social Security benefits would begin in January

---

[1]   We note the 2019 step-down in the decree has already occurred.

2019. The court calculated Fred's average law practice income at $171,775 per year, and included $48,000 income per year from his inherited property and $31,888 from Social Security. Linda argues Fred's average salary is higher and the court erred in not adding the interest accruing in Fred's 401K retirement account.

A spousal support award is circumstance-dependent, not an absolute right. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). The statutes on dissolution of marriage set specific criteria for a court to consider in determining whether to order spousal support. Iowa Code § 598.21A(1) (2017). These criteria include the length of the marriage, the age and health of the parties, the distribution of property, educational levels of the parties, earning capacity of the parties, the feasibility of the party seeking support to self-support at a standard reasonably comparable to the marriage, the time and training necessary for employment, and other factors the court determines to be relevant. *Id.* "[W]e will only disturb the trial court's award of spousal support if it fails to do equity between the parties." *Schenkelberg*, 824 N.W.2d at 486.

Linda claims the court should have considered the income tax burden on the spousal support payments and that her earning capacity is lower than the court imputed. According to Linda, the court miscalculated Fred's income by underestimating his legal income and not adding in interest from Fred's 401K account. Linda argues the court should have awarded her $7500 per month until age sixty-six, then $6000 per month after that.

We find the court's estimation of Fred's income was reasonable. The court estimated his income at a higher rate than he earned most years of his practice,

allowing for high income years but not so high he cannot afford the spousal support payments in a lower-income year. As to the interest accruing in Fred's retirement account, Linda will benefit from that accrual upon Fred's retirement if a modification occurs. Linda does not get to benefit from the interest accrual both before and after Fred begins to draw from the account, and we determine the appropriate time for inclusion in this case is after Fred is drawing from the account.

It appears Linda made no effort to find employment outside the home following her separation from Fred. Rather, she only worked at her businesses, which produce negative income. We find the court correctly judged Linda to have a higher earning capacity than her current earnings and that Linda's expectation for Fred, who is five years older than her, to continue to work while Linda continues her retirement would be inequitable. Linda was able to pay the family's bills for many years on $5000 per month, and the court's spousal support award is reasonably calculated to allow her to maintain a substantially similar standard of living. We affirm the district court's spousal support award.

*Life insurance.* In addition to the spousal support award, Linda claims Fred should be required to maintain a life insurance policy naming her as beneficiary. The court noted Fred's current term life insurance carried premiums of $498.50 per month and that the premiums would continue to rise as he ages, and it ruled Fred was not required to maintain life insurance to secure the spousal support award. We agree with the district court. The justification for life insurance requirements is to secure the obligation imposed by the decree. *In re Marriage of Boehlje*, 443 N.W.2d 81, 85 (Iowa Ct. App. 1989). The spousal support award here is not for a specific number of years but instead terminates upon Fred or

Linda's death or Linda's remarriage. When the award of alimony ceases at the death of either party, there is no need for insurance to pay the award after the obligor's death. *In re Marriage of Lytle*, 475 N.W.2d 11, 13 (Iowa Ct. App. 1991). Fred's death would terminate his obligation and Linda has no right to any further disbursements after that time. We affirm the court's refusal to impose a life insurance obligation on Fred.

**B.** **Property division.** On appeal, Linda claims all the inherited property should have been included in the court's equitable distribution of assets. She states Fred used marital assets, including his time and legal services, to benefit the trusts he inherited and the parties intended Fred's inherited property to fund their retirement. Linda requests an equalization payment equaling half of Fred's assets including all his inherited property.

Both Linda and Fred received their inheritances within the two years prior to Linda filing for dissolution. Neither party commingled their inheritance with the marital property. Neither party knew very much about the other's inheritance.

Following her mother's 2014 death, Linda received an inheritance of just over $200,000 in cash disbursements in 2015 and 2016. Linda gifted a portion to each of her three children.

The estates of Fred's parents were a complex organization of family companies and trusts. Fred's parents created a family trust with farmland for the benefit of their children in 1976, prior to Fred's marriage to Linda. At that time, the trustees, including Fred, determined to reinvest the income from the trust and only made distributions sufficient to cover each sibling's tax liability. That policy continued throughout the time of Fred and Linda's marriage. The ultimate

beneficiaries under the family trust were the children of Fred and his siblings. During the marriage, Fred received gifts of nonvoting, minority-interest stock in a family corporation started in the 1940s. The company never paid any dividends. After his father's death in 1998, all other family property went into a series of trusts for the benefit of Fred's mother which were managed by Fred's older brother, then Fred. When managing the trusts and corporation, Fred received payment on a fee-for-service basis for his work. Significant assets were expended from the trusts due to the high level of care needed by Fred's mother. Following the death of Fred's mother in 2013, her estate took over a year to settle, with distributions finally occurring in 2015 and 2016. The siblings also dissolved the 1976 family trust at that time. Fred's distributions included stocks placed in a limited liability company restricting inheritance to members' children, farm land, and additional nonvoting stock in the family corporation.

The Iowa Code requires "[t]he court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5). Inherited property and gifts received by either party "is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party." Id. § 598.21(6). We consider the following factors in determining whether refusal to divide the property is inequitable:

(1) contributions of the parties toward the property, its care, preservation or improvement;
(2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;

>     (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
>     (4) any special needs of either party;
>     (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013) (citations omitted).

For the first factor, Linda does not claim to have made any contribution toward the property or its care, preservation, or improvement. Rather, she claims Fred's contributions to the family trusts and corporation limited the resources available to Fred and Linda's family. However, the years Fred oversaw the trusts were for the benefit of his mother—to manage the property for her and then to ensure she had the care she needed. Moreover, Fred was paid for at least some of the work performed. Fred testified any work on the company and trusts was completed after he finished his legal work and did not affect his employment income.

As to the second factor, Linda did not have a close relationship with either of Fred's parents. There is no indication in the record that Fred's parents intended the inheritance as a joint devise or considered Linda in the devise left to Fred.

For the third factor, Fred worked full time and provided for both parties by his employment for the duration of their marriage. Linda also worked during most of the years Fred managed the trusts, and in the other years contributed to the marriage through her management of the home. The couple's daughters attended college, paid for by the couple, during the years Linda was working. Linda's work and management of the home and family did not help preserve Fred's inherited property. Indeed, the recent nature of both inheritances indicate the parties'

contributions to the family's economic welfare during the marriage were unrelated to preservation of any inherited property.

Linda argues her recent diagnosis of breast cancer should be considered a special need under the fourth factor to warrant dividing Fred's inherited property. She claims this diagnosis will result in significant medical insurance costs and unforeseen medical expenses while precluding meaningful employment. We find Linda's health insurance arguments unpersuasive, given Fred had paid for her health insurance through 2017 and she was eligible for Medicare starting in January 2018. As the district court noted, Linda presented no evidence she would incur significant additional expenses or that it would affect her ability to find and retain employment and her diagnosis has a high success rate from treatment.

The length of the parties' marriage is often considered as part of the fifth factor. While Fred and Linda have been married for many years, we also recognize the parties' standard of living did not rise as a result of any gifts or either party's inheritance, nor did the parties rely on the inheritances throughout their marriage. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 320 (Iowa 2000); *In re Marriage of Muelhaupt*, 439 N.W.2d 656, 660 (Iowa 1989). Linda anticipated a comfortable retirement from Fred's inheritance, but by her own admission did not have any knowledge of what or how much Fred would inherit. We note the income Fred realizes from his inheritance has been included in the spousal support calculations and therefore already factors into Linda's retirement.

Considering all the factors, we determine the property division was fair under the circumstances of the case. We find there is no inequity in the district

court setting aside Linda's and Fred's respective inheritances and gifts from the property division. We affirm the district court's property division ruling.

**C.    Trial attorney fees.**  Linda requests Fred pay $10,000 for her trial attorney and expert fees.  Linda claims she needs Fred to pay for her attorney due to her negative income on her businesses and lack of meaningful employment since 2011.  The district court ruled each party would pay their own attorney fees.

"Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).  "[A]n award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989).  While Fred has the higher annual income, we note Fred has already likely paid for some of Linda's attorney fees through the $700 per month of temporary support paid toward the credit card Linda charged her legal fees on.  In addition, the court ordered Fred to make a $25,000 equalization payment to Linda, which she could use toward her attorney fees.[2]  We cannot conclude the district court abused its discretion in declining to award Linda trial attorney fees.

**D.    Appellate attorney fees.**  Linda requests Fred pay $7500 toward her appellate attorney fees due to his income and ability to pay the fees.  Fred requests appellate attorney fees as he only defended the district court's ruling.

---

[2]    We note the court erred in its calculations in the decree, and the property division and equalization payment are over $17,000 in Linda's favor rather than the decree's determination of almost $6000 in Fred's favor.

An award of appellate attorney fees is not a matter of right but rests in our discretion. *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996). In determining whether to award appellate attorney fees, we consider, "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Under the circumstances of this case, we decline to grant appellate attorney fees to either party.

**AFFIRMED.**