**IN THE COURT OF APPEALS OF IOWA**

No. 19-1947
Filed June 17, 2020

**IN RE THE MARRIAGE OF ANDREW BENJAMIN REED**
**AND SUSAN SHARON REED**

**Upon the Petition of**
**ANDREW BENJAMIN REED,**
        Petitioner-Appellee,

**And Concerning**
**SUSAN SHARON REED,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Humboldt County, Kurt L. Wilke,

Judge.

        The mother appeals the denial of her request to modify physical care.

**AFFIRMED.**

        Dani L. Eisentrager, Eagle Grove, for appellant.

        Connor N. Mulholland, Des Moines, for appellee.

        Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

Susan Reed sought to modify the physical-care provisions of the dissolution decree, maintaining that joint physical care no longer worked. She requested that the court award her physical care of her and Andrew Reed's younger child and modify the child support award accordingly. While the district court adjusted Andrew's child support obligation, which he does not appeal, it disagreed with Susan's custody request, and so do we. Susan also requested payment of her trial and appellate fees. Andrew only requests an award of his appellate attorney fees. We decline those fee requests.

Susan and Andrew married in 2001 and divorced in August 2015. To resolve the issues in the dissolution case, they stipulated to the care and custody of their two children.[1] Their agreement established shared physical care in both parents with an alternating care schedule where Andrew cares for the children every Monday and Tuesday; Susan exercises care every Wednesday and Thursday; and the parties alternate Friday, Saturday, and Sunday. Both parents live in the Humboldt, Iowa, area, but Andrew works in Fort Dodge, Iowa. Susan is an abstractor at a title company, working hours from 8:00 a.m. until 4:45 p.m. Monday through Friday. Andrew is a vice president at a commercial bank with a flexible schedule, and he volunteers extensively in the area.

With the older child no longer impacted by the decree, Susan filed to modify the terms in December 2018. Naming several issues with the shared care arrangement, the main focus at trial was physical care. The district court increased

---

[1] At the time of trial, only one child was impacted by the decree, as the older child was eighteen years old and the younger was ten years old.

Andrew's child support obligation but denied Susan's requested change in the physical-care arrangement, finding that Susan did not meet the burden required to change physical care. Susan appeals. Susan raises several issues for our consideration. She asserts the district court erred by failing to conclude she established a material and substantial change in circumstances, by failing to award her physical care of the younger child, and by rejecting her claim for attorney fees. Both parties also ask for payment of their appellate attorney fees and costs.

## I. Standard of Review.

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "Accordingly, our review is de novo." *Id.*; *see* Iowa R. App. P. 6.907. "Although we make our own findings of fact, 'when considering the credibility of witnesses the court gives weight to the findings of the trial court' even though we are not bound by them." *Id.* (quoting *In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989)). The "controlling consideration" is the child's best interests. *In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984). We consider these unique custody issues on a case-by-case basis. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007).

## II. Modification of Physical Care.

The core issue is physical care. Susan contends the shared-care arrangement no longer works, while Andrew disagrees. She requested that the court alter the shared-care schedule and restrict Andrew's caretaking time to one overnight per week and every other weekend.

"To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary." *Id.* The changed circumstances "must relate to the welfare of the child[]." *Id.* And once established, the "parent seeking to take custody from the other must prove an ability to minister more effectively to the child[]'s well-being." *Id.* The heavy burden of proof "stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.*

We address what has occurred since 2015 when the parties agreed to share care. Susan testified she filed the modification action "because [she] didn't think [Andrew] spent enough time with [the child]." Her main points at trial were that the older child, before turning eighteen years old, did the actual caretaking of the younger child for Andrew, the child was afraid of Andrew's temper, and Andrew has an ongoing alcohol problem.[2] Indeed, Andrew acknowledged being charged with three operating-while-intoxicated (OWI) incidents involving excessive alcohol use, but two of those occurred before 2015, when the parties agreed on a shared-

---

[2] Susan referenced other complaints about Andrew such as the food he had available at his home, his follow-through with the child's medication for ringworm, whether he attended the child's entire activity, as well as Andrew's text messages with Susan about her new relationship. We find Andrew reasonably explained these issues and they do not rise to a level supporting a change in custody.

care schedule, and the third resolved as a public intoxication matter in 2016. The children were not involved directly in any of the incidents involving the alcohol charges. Other than the older child testifying about her awareness that Andrew sometimes drank alcohol, there was no direct connection between alcohol and his parenting. Addressing concerns about this history, the district court specifically ordered that Andrew refrain from alcohol use while he has custody of the child.

Susan's concerns seemed more related to Andrew's parenting style than any actual harm to the child. For example, Susan criticized Andrew for failing to have food in his home, and the district court clarified that the situation related to the type of food there as opposed to no food available. Susan testified the child was afraid of Andrew because he yelled and got angry. To be fair, Andrew characterized his parenting style as more strict than Susan's. Yet Susan believed she was more consistent as a parent and that the child was happier at her house. All noted the child was healthy and doing excellent in school. No one testified that the younger child was harmed physically or involved in any specific situation involving Andrew's temper. But several witnesses, including Susan, testified the child wanted to live with Susan. The child did not testify. The child was not in counseling because of any fears of his father, and no one testified to any emotional problems of the child. Still the older child testified Andrew had a temper "sometimes" and once shoved a chair that hit her leg causing a bruise. Moreover at some point earlier, the older child left the mother's home and moved in with Andrew for thirty days when Susan found alcohol and an electronic cigarette in the child's room. And although Susan complained about Andrew's care, she affords

Andrew extra time with the child when she travels to Germany every other year for ten to fourteen days and when she takes Sturgis motorcycle trips.

During trial, Susan also referenced an injunction that restricted the parties from contact except for communications about the children. Because of late-night messaging that incited emotional reactions from each other, Susan filed charges against Andrew. They agreed to an injunction restricting contact but for messaging about the children. But over their communication about the children, Susan testified:

> Q. Okay. Do you and Andy communicate in regards to matters concerning the children? A. Yes.
> Q. Do you feel you do a good job with that type of communication? A. I believe so.

To further make the case for modification, Susan points to the child's expressed fear of his father. Both Susan and the older child described the younger child as being too scared to ask Andrew for help with his needs.[3] Photographs of Andrew with the younger child smiling and positively interacting refuted the claims that the child and father did not get along. Emails between the parents outlined Andrew's involvement with the children in contrast to testimony that only Susan was involved. Andrew also itemized various activities involving him and the children. However, Susan countered with instances in which the older child covered Andrew's responsibilities, which the district court did not find persuasive. The older child testified that about once every couple of weeks she would help her

---

[3] The older child referenced two occasions in which the younger child asked to leave the father's home. The only concrete reason given at trial was that Andrew's internet was down and the child wanted to play a video game.

dad take care of her sibling because her dad had "things going on" and needed her help.

In the end, the district court denied the modification noting Susan failed to meet the heavy burden of proof. Because the district court can view these parents live, we often defer to its factual findings. "Because [the] trial court was present to listen and observe the witnesses, we give weight to its findings." *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). Susan's burden was to show by a preponderance of the evidence that conditions have substantially changed since 2015. *See Frederici*, 338 N.W.2d at 158. The district court specifically noted current complaints about Andrew that were either minimized with testimony of the older child (Andrew's anger) or known pre-divorce (Andrew's two OWI's). After a full review of the written record, we agree that Susan has not met the burden necessary to modify the shared-care arrangement. In spite of some normal relationship bumps in the road with an ex-spouse and growing children, the arrangement continues to work without any negative consequences to the mental, emotional, or social health of the child. *See In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980) (finding that any changes since the divorce were "not substantial enough to support modification of the custody award"). We affirm the district court ruling on custody.

**III. Attorney Fees.**

Susan's other requests involve attorney fees. She asserts the district court erred by not awarding her attorney fees. The district court required each party to pay their own attorney fees. An award of attorney fees is discretionary with the trial court "and will not be disturbed on appeal in the absence of an abuse of

discretion." *In re Marriage of Wessels*, 542 N.W.2d 486, 491 (Iowa 1995). The controlling factor in attorney fee awards is the ability to pay the fees. *In re Marriage of Muelhaupt*, 439 N.W.2d 656, 662–63 (Iowa 1989). Here both parents are employed and have sufficient income to pay their attorney fees. We will not disturb the ruling of the district court on the attorney fee issue.

Both parties request appellate attorney fees. Appellate attorney fees are within the discretion of the appellate court. *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). Here we decline to award appellate attorney fees to either party.

**IV. Disposition.**

We affirm the district court order denying the custody modification. We assess the costs of the appeal to Susan.

**AFFIRMED.**